**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHAFAAT KHAN** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| **v.** | : | **No. 11-7465** |
| | : | |
| **MICHAEL GORDON, et al.,** | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                    **May 31, 2013**

Currently pending before the Court is a counseled petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Shafaat Khan ("Khan"). Khan is currently on probation[1] following a three to twenty-three month prison term stemming from convictions in the Montgomery County Court of Common Pleas on charges of corrupting the morals of a minor, indecent assault, and unlawful contact with a minor. (Pet. ¶¶ 3-5.) For the reasons that follow, I respectfully recommend that the petition be **DISMISSED** without an evidentiary hearing and with no certificate of appealability issued.

---

[1] In order for this Court to consider the merits of Petitioner's request for habeas corpus relief, it must have subject matter jurisdiction under the federal habeas corpus statute, 28 U.S.C. § 2254. For a federal court to have subject matter jurisdiction over a habeas corpus petition, the petitioner must be "in custody" as the result of the state court conviction being challenged. *See* 28 U.S.C. § 2254(a). The "in custody" requirement is a jurisdictional requirement, and requires that the petitioner be in custody under the conviction or sentence which he challenges "at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-491 (1989). This requirement is consistent with the purpose of the writ of habeas corpus, which is to challenge the legal authority under which the petitioner is being held in custody. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

Here, Petitioner was on probation, not incarcerated, at the time of filing the instant petition. It is well settled that "being on probation meets the 'in custody' requirement for purposes of the habeas statute." *See Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004) (citation omitted). Therefore, I conclude that this Court has subject matter jurisdiction.

## I.    FACTS AND PROCEDURAL HISTORY

In November, 2006, Khan began giving keyboarding lessons to S.K., a fourteen-year-old girl.  (Pet. Ex. 23 (N.T. 12/15/08) at 36.)  The lessons took place in Khan's basement.  (*Id.* at 37.)  During the lessons, Khan gave S.K. massages.  (*Id.* at 43.)  S.K. testified that the massages initially focused on the neck, back, and shoulder area, but progressed "further and further" to a point where they became more sexual in nature.  (*Id.* at 48-50.)  S.K. testified that Kahn repeatedly touched her breasts over her bra, told her to remove her bra and touched her bare breasts, got on top of her and thrust his hips into her, and kissed her all over.  (*Id.* at 48-60.)  These incidents continued until the last week of February 2007, when S.K. told Khan to stop touching her.  (*Id.* at 61-62.)[2]  S.K. and her parents reported these incidents to the police on March 7, 2008.  (Pet. Ex. 1, 7, 15.)  Following a jury trial, at which he was represented by Vincent P. DeFabio, Esq., Khan was found guilty of one count each of:  (1) Corrupting the Morals of a Minor (18 Pa. Cons. Stat. Ann. § 6301); (2) Indecent Assault (18 Pa. Cons. Stat. Ann. § 3126); and (3) Unlawful Contact with a Minor (18 Pa. Cons. Stat. Ann. § 6318).  (*See* Pet. Ex. 26.)

Prior to sentencing, Khan replaced his trial counsel with Norris Gelman, Esq.  (*See* Pet. Ex. 27.)  On April 13, 2009, after hearing testimony from three character witnesses called by the defense and arguments from both attorneys, the trial court sentenced Khan to concurrent sentences of three to twenty-three months imprisonment, five years probation, and a $1,000 fine.  (*Id.* at 36.)  Khan then filed a counseled post-sentence motion in which he argued one issue:

---

[2]  S.K. disclosed the incidents to two individuals, both of whom testified at Khan's trial. Additionally, emails that S.K. wrote to one of the individuals were admitted into evidence at trial.  (*See* Pet. Ex. 8-14.)

The evidence was insufficient to support the unlawful contact with a minor conviction because there was insufficient evidence of communicative contact with a minor as required by the statute defining the offense and because the jury was invited to convict the defendant based on a finding of mere physical contact.

(Pet. Ex. 28 at 2.)  On June 2, 2009, a hearing was held on Khan's post-sentence motion and on June 9, 2009 the trial court denied the post-sentence motions.[3]  (Pet. Ex. 30.)  Khan did not file a direct appeal.

On January 21, 2010, while still represented by Attorney Gelman, Khan filed a counseled petition and memorandum of law pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 et seq.  (Pet. Ex. 32.)  He raised the following claims:

---

[3]  In finding that the evidence was sufficient to support the convictions, the trial court held:

1. The Contact, proscribed by 18 Pa. C. S. A. § 6318, took place when [Khan] instructed S.K. to leave the basement and go upstairs to the family room.  The record makes it clear that these instructions were given for the purpose of engaging in indecent assault.

2.  Once upstairs in the family room, [Khan] proceeded to massage S.K.'s breasts.  Additionally, [Khan] got on top of S.K. and "started thrusting his hips back and forward."

3.  Additionally, S.K. testified that on one occasion [Khan] instructed her to "stand against the wall."  After S.K. complied with his command, [Khan] proceeded to pull up S.K.'s shirt and kiss her stomach.  The instruction to stand against the wall was clearly uttered for the purpose of engaging in indecent assault.

4.  The Court finds that this evidence was sufficient to support the Unlawful Contact with a Minor Conviction.

(Pet. Ex. 30 (footnotes omitted).)

1. Trial counsel was ineffective for failing to object to instructions which invited the jury to convict on the charge of unlawful contact with a minor if the jury found either physical contact or communication.

2. Trial counsel was ineffective because he failed to object to the Court's instructions on demeanor evidence.

3. Trial counsel was ineffective for failing to request a limiting instruction as to jury's use of the complainant's statements to others pertaining to the abuse and as to the e-mails to her college friend.

4. Trial counsel was ineffective for not requesting a limiting instruction as to the e-mails which would have limited the jury's use of same to the making of a prompt report and not for the truth asserted therein.

5. Trial counsel was ineffective because he failed to object to the court's instructions that if the evidence was in direct conflict, it was the jury's obligation to determine who to believe as this placed a burden on Petitioner, who testified, to convince the jury that his denials of any molestation were true–in other words, a burden to prove his innocence

6. Deprivation of reasonable doubts to which Petitioner was constitutionally entitled.

7. Trial counsel ineffective because he failed to object to Court's charge on character witnesses which directed the jury to weigh the character testimony along with the other evidence in the case

(*Id.*)  An evidentiary hearing was held on March 29, 2010.  (Pet. Ex. 33.)  The PCRA Court

dismissed the Petition by Order and Memorandum Opinion filed April 14. 2010.  (Pet. Ex. 34.)

On May 7, 2010, Attorney Gelman filed a 1925(b) Statement of Matters Complained of On

Appeal, in which Khan raised the following issues for appeal:

1. Trial Counsel was ineffective for failing to object to the Court's instructions which invited the jury to convict on the Charge of Unlawful Contact with a Minor if the jury found either physical contact or communication.

2. Trial counsel was ineffective because he failed to object to the Court's instructions on demeanor evidence.

3.      Trial counsel was ineffective for failing to request a limiting instruction as
        to the jury's use of the complainant's statements to others pertaining to the
        abuse and as to the e-mails to her college friend.

4.      Trial counsel was ineffective for not requesting a limiting instruction as to
        the e-mails which would have limited the jury's use of same to the making
        of a prompt report and not for the truth asserted therein.

5.      Trial counsel was ineffective because he failed to object to the Court's
        instructions that if the evidence was in direct conflict it was the jury's
        obligation to determine who to believe as this placed a burden on
        Petitioner, who testified, to convince the jury that his denials of any
        molestation were true-in other words, a burden to prove his innocence
                (a) These instructions also deprived Petitioner of reasonable doubts to
                which he was constitutionally entitled and served to prohibit testimony
                that was not believed from being considered as raising a reasonable doubt.

6.      Trial counsel was ineffective because he failed to object to the court's
        charge on character witnesses which directed the jury to weigh the
        character testimony "along with the other evidence in the case."

(Pet. Ex. 35, Ex. B (Counseled Statement of Matters Compl. of on Appeal).)  On May 11, 2010,

the PCRA court issued an Order adopting its April 14, 2010 Order and Opinion as its Rule

1925(a) opinion for purposes of Khan's appeal.  (*See* Pet. Ex. 36 (Pa. Super. Ct. PCRA Opinion)

at n.1.)  In his counseled appellate brief, Khan raised the following claims:

1.      Was trial counsel ineffective for failing to object to the Court's instruction
        which invited the jury to convict on the charge of unlawful contact with a
        minor if the jury found either physical contact or communication?

2.      Was trial counsel ineffective because he failed to object to the Court's
        instructions on "demeanor evidence"?

3.      Was trial counsel ineffective for failing to request a limiting instruction as
        to the jury's use of the complainant's statements to others pertaining to the
        abuse and as to the e-mails to her college friend?

(Pet. Ex. 35.)  The Superior Court affirmed the PCRA court's dismissal on November 9, 2010.

(Pet. Ex. 36.)  On August 8, 2011, the Pennsylvania Supreme Court denied Khan's petition for

allowance of appeal.  *See Commonwealth v. Khan*, No. 847 MAL 2010 (Pa. Aug. 8, 2011).

On December 2, 2011, Khan, now represented by his current counsel, filed the instant

federal habeas petition, in which he asserted the following grounds for relief:

1.  Trial counsel rendered ineffective assistance of counsel under the Sixth and Fourteenth Amendments by failing to object to the Trial Court's jury instruction on "demeanor evidence."

2.  Trial counsel rendered ineffective assistance of counsel under the Sixth and Fourteenth Amendments in failing to request a limiting instruction on how the jury was to consider the prior statements made by the complainant to two Commonwealth witnesses.

3.  Trial counsel rendered ineffective assistance of counsel under the Sixth and Fourteenth Amendments by failing to object to the Trial Court's erroneous jury instruction on the offense of Unlawful Contact With a Minor.

4.  Trial counsel rendered ineffective assistance of counsel under the Sixth and Fourteenth Amendments when he failed to object to that portion of the Trial Court's jury instructions which had the effect of diminishing the reasonable doubt burden of proof standard and the presumption of innocence standard.

(Pet. at 6-11.)  On March 29, 2012, Khan filed a Memorandum of Law in support of his Petition.

(Doc. No. 11).  On August 6, 2012, Respondents filed a Response, asserting that the claims

should be dismissed because they are procedurally defaulted and/or meritless.  (Doc. No. 19).

On August, 26, 2012, Khan filed a motion for leave to amend his habeas petition to add

additional Claims 5 through 18:

5.  Ineffective assistance of trial counsel for failing to challenge the lack of minority members on Petitioner's jury.

6.  Ineffectiveness of trial counsel for failing to move for an acquittal based on the sufficiency of the evidence.

7.  Ineffective assistance of trial counsel for failing to call fact and character witnesses.

8.     Ineffective assistance of PCRA counsel for failing to challenge an illegal conviction and sentence.

9.     Ineffective assistance of trial counsel[4] for failing to object to judge's and prosecutor's misstatements that the criminal conduct occurred in November 2006, rather than December 2006.

10.    Ineffective assistance of trial counsel for failing to adduce expert testimony.

11.    Ineffectiveness of trial counsel for failure to object to prosecutorial misconduct.

12.    Miscarriage of justice / actual innocence.

13.    Ineffective assistance of trial counsel for failing to pursue a direct appeal.

14.    Ineffective assistance of trial counsel for failing to move for a mistrial or to vacate convictions.

15.    Ineffective assistance of trial counsel for failing to move for relevant discovery of S.K.'s alleged emotional physical health.

16.    Ineffective assistance of trial counsel for failing to retain expert in Indian culture and music.

17.    Ineffective assistance of trial counsel for failing to "require jury to consider all evidence, not just *he v. she* evidence."

18.    "Ineffective Assistance of Counsel in the Cumulative/Totality."

(Doc. No. 20.)  The Commonwealth has filed no response to this Motion.


II.     **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") grants to persons

in state or federal custody the right to file a petition in a federal court seeking the issuance of a

_____

[4]  I note that Khan states in his claim that "PCRA counsel" failed to object.  However, because the claim is that counsel failed to object "when the jury was repeatedly told by the Judge (during jury selection) and the prosecutor (particularly in his closing statement and at sentencing hearing)," this is clearly a reference to trial counsel.  (*See* Am. Pet. at 17-9 (parentheticals in original).)

writ of habeas corpus. *See* 28 U.S.C. § 2254. AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000) (*citing Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996)). Pursuant to 28 U.S.C. § 2254(d), as amended by AEDPA, a petition for habeas corpus may only be granted if: (1) the state court's adjudication of the clam resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Werts*, 228 F.3d at 196.

The Supreme Court expounded upon this language in *Williams v. Taylor*, 529 U.S. 362 (2000). In *Williams*, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000) (*citing Williams*, 529 U.S. at 389-390). The Court in *Williams* further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Hameen*, 212 F.3d at 235 (*citing Williams*, 529 U.S. at 388-389). "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." *Werts*, 228 F.3d at 196 (*citing Williams*, 529 U.S. at 389).

## III. DISCUSSION

### A. AEDPA Merits Review of Claims 1, 2, and 3.

The PCRA court denied Claims 1, 2, and 3 on their merits in its April 14, 2010 Order and Opinion. (*See* Pet. Ex. 34.) Each of these claims assert that Khan is entitled to habeas relief because his trial counsel was ineffective. Generally, claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695.

"It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams*, 529 U.S. at 391. *Strickland* also applies to claims of ineffective assistance of appellate counsel. *See Buehl v. Vaughn*, 166 F.3d 163, 173-74 (3d Cir. 1999) (*citing Strickland*, 466 U.S. at 689). Thus, Petitioner is entitled to relief if the Pennsylvania courts' rejection of his claims was either "contrary to, or involved an unreasonable application of," that established law.

As to the "contrary to" clause, the PCRA Court addressed Claims 1, 2, and 3 using the Pennsylvania courts' three-pronged test for deciding ineffective assistance of counsel claims. *See Commonwealth v. Khan,* CP-4136-2008 at 1 (Mont. Ct. Cm. Pl. Apr. 14, 2010). This three-part test requires the petitioner to establish the following: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for their action; and (3) the petitioner was prejudiced by the ineffectiveness. *See Commonwealth v. Rios*, 920 A.2d 790, 799 (Pa. 2007). The Third Circuit has held that the Pennsylvania ineffectiveness test is not contrary to the Supreme Court's *Strickland* standard. *See Werts,* 228 F.3d at 204. Thus, the application of the Pennsylvania three-pronged test was not "contrary to clearly established federal law." This Court will analyze Claims 1, 2, and 3 to see if the state courts "unreasonably applied" the clearly established

*Strickland* standard.[5]

### 1. Ineffectiveness of trial counsel for failure to object to the Court's jury instructions on "demeanor evidence." (Claim 1)

Khan first claims that his trial counsel was ineffective for failing to object to the trial court's jury instruction on demeanor evidence. The trial court instructed the jury on demeanor evidence as follows:

> You will consider the demeanor of the witness on the stand, the manner in which the witness comported him or herself before you. And in that regard, you will take into account those small, yet indefinable, nuances that all of us consider in assessing the honesty of someone we meet for the very first time.
>
> The spontaneous gesture, the lifting of the eyebrow, the shrugging of the shoulder, the intonation of the voice, the flash of the eye, the facial express – members of the jury, there is barely a day that passes in your life that you don't apply these measures against others in making an assessment of their honesty and credibility. And you will do precisely the same in the jury room when you come to judge the credibility of the witnesses who have testified in this case.

N.T. 12/17/2008 at 200-201. Khan argues that this demeanor evidence instruction has "no role to play" in a criminal case. (Pet. Mem. at 40.) He argues that he was prejudiced by the instruction because his cultural background, mannerisms, English, lack of understanding of "Americanisms," facial expressions, and eye contact are all "foreign." (Pet. Mem. at 42.) He asserts that trial counsel's failure to object to the charge was prejudicial because, as the evidence was otherwise insufficient to support a conviction, the charge invited the jury to render its verdict based upon witness demeanor. (Pet. Mem. at 51-52.) I find these arguments to be without merit.

---

[5] The Supreme Court has instructed that the "contrary to" and "unreasonable application" clauses in 28 U.S.C. § 2254(d)(1) should be viewed independently. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). As noted above, the Pennsylvania test is not "contrary to" the *Strickland* standard. *See Werts,* 228 F.3d at 204. Thus, unless specifically noted, each claim has satisfied the "contrary to" clause and the Court will proceed by analyzing each claim's compliance with the "unreasonable application" clause.

The PCRA court found Khan's claim was meritless because the underlying assertion of instructional error had no merit and, accordingly, counsel had a reasonable basis for failing to raise an objection to the instruction.[6] (Pl. Ex. 34 at 3-4.) Specifically, the court held that "it is well-founded in Pennsylvania that demeanor is a relevant factor that the jury may consider in assessing a witness's credibility. . . . The instruction, in its entirety, plainly and accurately informed the jury how to assess witness demeanor." (*Id.* at 4.) Having determined that there was no error with this instruction, the PCRA court concluded that the ineffective assistance claim had no merit. This conclusion was not an unreasonable application of *Strickland*.

Counsel cannot be deemed to have violated professional norms by failing to raise a meritless objection. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) (failure to raise non-meritorious issues does not constitute ineffective assistance of counsel); *Thomas v. United States*, 951 F.2d 902, 904 (8th Cir. 1991) (defense counsel not ineffective for failing to raise meritless objections); *Sweet v. Tennis*, Civ. A. 07-5349, 2008 WL 4372851 (E.D. Pa. Aug. 18, 2008) (same). In addition, it is well-settled that a federal habeas court is bound by state court determinations of state law, and has no authority to review such determinations. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); *Swarthout v. Cook*, ___ U.S. ___, 131 S. Ct. 859, 861 (2011); *Warren v. Kyler*, 422 F.3d 132, 137 (3d Cir. 2005) (state court determinations of state law issues are not properly before federal court on

---

[6] I note that at the PCRA hearing, trial counsel testified that he did not object because: (1) the charge adhered to the standard demeanor evidence instruction, and (2) he felt that the charge strengthened Khan's case in light of the abnormal demeanor exhibited by S.K. on the witness stand. (Pet. Ex. 33 at 7-9.)

habeas review); *Priester v. Vaughn,* 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'" (*quoting Estelle*)).

Given the PCRA court's ruling under state law on the demeanor instruction, it must follow that trial counsel's failure to raise a meritless objection to the instruction cannot constitute ineffective assistance of counsel. I therefore recommend that Petitioner's request for habeas relief on this basis be denied.

> **2.      Trial counsel rendered ineffective assistance in failing to request a limiting instruction on how the jury was to consider the prior statements made by the complainant to two Commonwealth witnesses.**

Khan claims that trial counsel was ineffective for failure to request a limiting instruction regarding the seven emails that S.K. wrote to a friend.[7] Prior to trial, Attorney DeFabio filed a motion *in limine* to exclude the emails. The trial court conducted a pre-trial evidentiary hearing, and determined that the emails could come into evidence under the Pennsylvania Rule of Evidence 803(3)'s "state of mind" hearsay exception, subject to the redaction of any prejudicial or irrelevant material. The prosecutor referred to the emails in his opening and closing remarks, and presented them to the jury on an overhead projector during trial. Having filed an unsuccessful motion *in limine* to exclude the emails, Attorney DeFabio did not object to their admission or use at trial, nor did he request a jury instruction directing the jury to limit their consideration of the emails.

In the PCRA evidentiary hearing, DeFabio gave the following testimony regarding his

_____

[7] The e-mails were written by S.K. to her friend, Priyanka Basak. (*See* Pet. Ex. 8-14.) In the e-mails, she provides various details about sexual interactions with Khan shortly after the events occurred. (*See id.*)

13

decision to not request a limiting instruction for the emails:

> I would not have wanted to emphasize those e-mails or give them any more status than what they already had. I mean, they – in my view, at least, they were damaging. It wasn't only e-mails, but she had made verbal complaints – to this girlfriend and another student about what had occurred. So, I certainly didn't want to elevate those in the mind of the jury by giving some special instruction. For the most part, I was trying to move those into the background as best I couldn't [sic]. I didn't want to give them any special legal status. Let's put it that way.

N.T. 3/29/10 at 13-14. The PCRA court held that DeFabio's decision was reasonable. (Pet. Ex. 34 at 5.) Additionally, the PCRA court found that Khan did not satisfy the prejudice prong of an ineffective assistance claim because "the evidence as a whole was sufficiently compelling to convict Petitioner of the crimes charged." (*Id.* at 6.)

I conclude that the PCRA court's conclusion, that DeFabio had a reasonable basis for not requesting the instruction, was not an unreasonable application of *Strickland*. Defense lawyers are given leeway to make tactical decisions when deciding how to confront damaging evidence. *Werts*, 228 F.3d at 190 (holding that "ineffectiveness will not be found based on a tactical decision which had a reasonable basis designed to serve the defendant's interests"); *United States v. Hardy*, 451 F.2d 905 (3d Cir. 1971) (trial counsel decision not to request cautionary instruction because it would emphasize testimony was a tactical decision he was entitled to make). In this case, DeFabio moved *in limine* to exclude the emails from evidence, and the trial court conducted a pre-trial hearing on the matter, and denied the motion. Because trial counsel attempted (unsuccessfully) to exclude the evidence, the PCRA court's conclusion that counsel acted reasonably in deciding to not call further attention to the evidence by requesting a cautionary or limiting instruction, was a reasonable application of *Strickland*. *See Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (stating that trial counsel is "not constitutionally

required to request a limiting instruction any time one could be given, because counsel might reasonably conclude that such an instruction might inadvertently call attention to the evidence . . . ").  Accordingly, the PCRA court's conclusion was not an "unreasonable application" of the first prong of *Strickland*.[8]

### 3. Trial counsel rendered ineffective assistance by failing to object to the trial court's erroneous jury instruction on the offense of unlawful contact with a minor.

Khan next claims that trial counsel was ineffective for failing to object to the jury instruction on Unlawful Contact With a Minor, 18 Pa. Cons. Stat. Ann. § 6318.  The trial court instructed the jury on this offense as follows:

> He is lastly charged with Unlawful Contact with a Minor.  If you find the Defendant guilty of this offense, you must find that each of the following three elements has been proven beyond a reasonable doubt:  First, that the Defendant was intentionally in contact with a minor; Second, that the contact was the – was for the purpose of engaging in an unlawful act, in this case, indecent assault; And, third, that either the Defendant or the person being contacted was within the Commonwealth.  Contact is any direct or indirect contact or communication by any means, method, or device.  A minor is an individual under the age of 18.

(Pet. Ex. 25 at 212-13.)  The PCRA court addressed Khan's claim on the merits, finding the underlying claim of instructional error lacked merit because the charge "adequately and accurately" reflected the law.  (Pet. Ex. 34 at 3.)  The PCRA court therefore concluded that counsel could not be deemed ineffective for failing to object to this instruction.  (*Id.*)

As stated, a federal habeas court reviewing habeas claims cannot reexamine state court determinations on state law questions.  *Estelle*, 502 U.S. at 67-68; *Priester,* 382 F.3d at 402. Because this Court is bound by the state law determination that the jury charge accurately

---

[8]  Khan also asserts that he was prejudiced because, absent the emails, there was not "sufficient evidence" to establish a conviction.  Because he has failed to show the PCRA court unreasonably applied the first prong of *Strickland*, there is no need to reach the prejudice prong.

reflected the elements of the charged crime, it necessarily follows that the PCRA court did not

unreasonably apply the first *Strickland* prong when it determined that trial counsel was not

deficient for failing to object. *See Werts,* 228 F.3d at 203. Accordingly, this Court recommends

that Petitioner's request for relief on this basis be denied as meritless.

**B.    Claim 4 – Ineffective assistance for failing to object to instructions on reasonable doubt**

Khan next argues that trial counsel was ineffective for failing to object to the trial court's

jury instructions on reasonable doubt and credibility. He asserts that the trial court instruction on

witness credibility permitted the jury to convict him on a "belief-based standard and not on the

traditional *beyond a reasonable doubt standard.*" (Pet. Mem. at 121 (emphasis in original).) In

other words, he argues that the instructions lowered the reasonable doubt standard by permitting

the jury to decide the case solely on which witnesses to credit and which evidence to accept

based on whether or not the testimony or evidence was believable, and thus weakened the

"beyond a reasonable doubt" standard. I conclude that this argument is procedurally defaulted.[9]

---

[9]   Khan included this claim in his PCRA petition. (Resp. Ex. A.) However, at the PCRA
evidentiary hearing, Attorney Gelman declined to elicit testimony from Attorney DeFabio on
this claim, conceding that the claim was not supported by Pennsylvania case law, and stating that
the claim was only raised to preserve it for later presentation to a higher court. (Pet. Ex. 33 at
15-16.) The PCRA court's April 14 Order and Opinion noted that Khan had included the claim
for the purpose of preserving it for appeal, noting that current case law was adverse to his
position on the issue. (Pet. Ex. 34 at 2 n.1 (citing *Commonwealth v. Kerrigan*, 920 A.2d 190,
197-99 (Pa. Super. Ct. 2007)).) Khan included the claim in his Rule 1925(b) Statement (*see* Pet.
Ex. 35, Ex. B). However, in his appeal brief filed with the Pennsylvania Superior Court, Khan
did not raise any claims attacking the reasonable doubt instruction. (*See* Pet. Ex. 35 at 6.)
Accordingly, the Superior Court did not address the merits of the claim.
      Khan admits the claim is procedurally defaulted due to his failure to argue the claim to
the Superior Court. (*See* Pet. Mot. for Leave to Amend (Doc. 20) at 7, 10.) In his Motion for
Leave to Amend, he argues that Attorney Gelman was ineffective for failing to include the claim
in the PCRA appellate brief.
      In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the United States Supreme Court recognized
a "narrow exception" to the general rule that attorney errors in collateral proceedings do not

However, for the sake of completeness, I will address the claim on its merits. I conclude that,

even if considered on the merits, the claim does not present a basis for habeas relief.

The Trial Court instructed the jury on reasonable doubt as follows:

The Defendant, like all criminal Defendants, is presumed to be innocent. A fundamental principle of our system of criminal law is that the Defendant is presumed to be innocent. The mere fact that he was arrested and is accused of a crime is not any evidence against him. Furthermore, the Defendant is presumed innocent throughout the trial and unless and until you conclude based on careful and impartial consideration of the evidence that the Commonwealth has proven him guilty beyond a reasonable doubt.

It is not the Defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving that each and every element of the crimes charged has been proved and the Defendant is guilty of that crime beyond a reasonable doubt.

A person accused of a crime is not required to present evidence or prove anything in their own defense. If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove a reasonable doubt that the Defendant is guilty, then your verdict should be guilty [sic].

Although the Commonwealth has the burden of proving he Defendant is guilty, this does not mean that the Commonwealth must prove the Defendant's guilty beyond all doubt and to a mathematical certainty, nor must it demonstrate the complete impossibility of innocence.

A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to pause and hesitate before acting upon a matter of importance in his or her own affairs. I'll give that to you again. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to pause and hesitate before acting upon a matter of importance in his or her own affairs.

A reasonable doubt must arise out of the evidence that was presented or

establish cause to excuse a procedural default. *Id.* at 1315. This exception applies only to claims of ineffective assistance at trial which would otherwise be defaulted due to attorney ineffectiveness in an "initial-review collateral proceeding," i.e., a collateral proceeding "which provide[s] the first occasion to raise a claim of ineffective assistance at trial." *Id.* In addition, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say the prisoner must demonstrate that the claim has some merit." *Id.* at 1318. The Supreme Court was careful to point out that its holding in *Martinez* "does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*. . . . *Id.* at 1320 (emphasis added). Because the attorney error that allegedly caused the procedural default was the failure to argue Claim 4 on appeal, it does not fall within the *Martinez* exception.

out of the lack of the evidence presented with respect to some element of the crime. A reasonable doubt must be a real doubt. It may not be an imaged one, nor may it be a doubt manufactured to avoid carrying out an unpleasant duty.

You may not find the Defendant guilty based on speculation, or guesswork, or on mere suspicion of guilt. The Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt. If it meets that burden, then the Defendant is no longer presumed innocent and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden, then you must find the Defendant not guilty.

(Pet. Ex. 25 at 209-210.)

Prior to giving the "reasonable doubt" instruction, and in the context of discussing the issue of credibility, the court instructed the jury:

Where there is a conflict in the testimony, the jury has to decide which testimony to believe, but you should first try to reconcile, or fit together, any conflicts if you can fairly do so. Discrepancies and conflicts between the testimony of different witnesses may or may not cause you to disbelieve some or all of their testimony. . . . If you cannot reconcile the conflict in the testimony, it is up to you to decide which testimony, if any, to believe, and which to reject as untrue or inaccurate.

. . .

If you conclude that one of the witnesses testified falsely and intentionally about any fact which is necessary to your decision in this case, they and for that reason alone, you may, if you wish disregard everything that that witness said.

However, you're not required to disregard everything the witness said for this reason. It is entirely possible that the witness testified falsely and intentionally in one respect but truthfully about everything else. If you so find, then you may accept that part of the testimony which is truthful and which you believe and reject that part which is false and not worthy of belief.

(*Id.* at 201-05.) Khan argues that the credibility instruction "carved out" an exception to the reasonable doubt standard because it allowed the jury to "cherry pick the part that they 'believe is truthful and reject the part which is false and not worthy of belief.'" (Pet. Mem. at 116 (quoting Pet. Ex. 25 at 205.)

The Due Process Clause protects a criminal defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364 (1970). The Due Process Clause also requires that

the jury be instructed on the necessity of proof beyond a reasonable doubt. *Cool v. United States*, 409 U.S. 100, 104 (1972). "On federal habeas review, the relevant question is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process . . . , not merely whether the instruction is undesirable, erroneous, or even universally condemned.'" *Jacobs v. Horn*, 395 F.3d 92, 111 (3d Cir. 2005) (*quoting Martin v. Warden, Huntingdon State Corr. Inst.*, 653 F.2d 799, 809 (3d Cir. 1981) (alteration in *Martin*) (*quoting Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) and *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973))). "'[A] single instruction to the jury may not be judged in artificial isolation but must be viewed in the context of the overall charge.'" *Martin*, 653 F.2d at 809-10 (*quoting Cupp*, 414 U.S. at 146-47). I conclude that the entirety of the trial court's instructions satisfied due process because it clearly and accurately stated the Commonwealth's burden of proof.

First, I note that the reasonable doubt instruction is almost a word-for-word recitation of the Pennsylvania Suggested Jury Charge on reasonable doubt. *See* Pennsylvania Suggested Standard Criminal Jury Instructions, 7.01 (Crim) Presumption of Innocence – Burden of Proof – Reasonable Doubt.[10] It will be a rare instance when counsel will be found ineffective for failing

---

[10] 7.01 Presumption of Innocence – Burden of Proof – Reasonable Doubt

> 3. Although the Commonwealth has the burden of proving that the defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt and to a mathematical certainty, nor must it demonstrate the complete impossibility of innocence. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of the crime. A reasonable doubt must be a real doubt; it may not be an imagined one, nor may it be a doubt

to object to a standard jury instruction, especially one that has already withstood challenges on due process grounds. *See Thomas v. Beard*, 388 F. Supp. 2d 489, 532 (E.D. Pa. 2005) (noting Pennsylvania Supreme Court has approved Pennsylvania's reasonable doubt charge), *vacated in part on other grounds by Thomas v. Horn*, 570 F.3d 105 (3d. Cir. 2009); *Labrake v. Stowitzky*, Civ. A. No. 07-212, 2009 WL 2924808 at *22 (E.D. Pa. Jan. 3, 2009) (holding that instruction that tracked language from Pennsylvania Suggested Standard Instructions on witness credibility and reasonable doubt were "presumptively proper"). Moreover, the Third Circuit has approved jury instructions on reasonable doubt very similar to the one given in the instant case.[11] *See*

---

manufactured to avoid carrying out an unpleasant duty.

Pennsylvania Suggested Standard Criminal Jury Instructions, 7.01 (Crim) Presumption of Innocence – Burden of Proof – Reasonable Doubt (2005).

[11] In *Hernandez*, the Third Circuit Court found the following "traditional" reasonable doubt instruction correct:

> "A defendant is never to be convicted on mere suspicion or conjecture. The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or testifying himself or producing any evidence.
>
> If after a fair, impartial and careful consideration of all the evidence, you have a reasonable doubt as to a defendant's guilt, it is your duty to acquit him...
>
> Now, what is a reasonable doubt? Now, I'll try to define that. Reasonable doubt. A reasonable doubt is doubt based on reason and common sense. A reasonable doubt is such a doubt as would cause you to hesitate to act in matters of importance in your own lives. A reasonable doubt may arise from a lack of evidence. It is doubt based on reason, logic, common sense and experience. Reasonable doubt is not vague or hypothetical doubt. It is not speculative imaginary qualms or misgivings. It is not just an excuse by a juror to avoid the performance of an unpleasant duty. It is not the normal sympathy which one human being may hold for another.

*United States v. Hernandez*, 176 F.3d 719, 728-35 (3d Cir. 1999).

Second, Khan's assertion that the reasonable doubt charge was "diluted" by the credibility charge because the jury was thereby required to decide the case based on whom they believed between Khan and S.K., is belied by the record. Nowhere in the instructions did the trial court instruct the jury to decide the case *only* on whom it believed between the victim and Khan. To the contrary, the trial transcripts reveals the jury was instructed numerous times to consider all of the evidence in making their determinations, including whose testimony they found credible. Specifically, immediately after instructing on witness credibility and as an immediate predicate to the reasonable doubt instruction, the trial judge told the jury that Khan "like all criminal Defendants is presumed to be innocent," and that this presumption lasted throughout trial until the jury "concluded, based on careful and impartial consideration of the evidence that the Commonwealth has proven him guilty beyond a reasonable doubt." (Pet. Ex. 25 at 208.) The trial judge later instructed the jury that "a person accused of a crime is not required to present evidence or prove anything in their own defense." (*Id.* at 209.)

Importantly, the trial judge told the jury that it was their job to weigh the credibility of the witnesses based on believability, and further instructed the jury that "where there is a conflict in the testimony, the jury has to decide which testimony to believe, but you should first try to reconcile, or fit together, any conflicts if you can fairly do so." (*Id.* at 201-202.) This instruction completely comports with the United States Supreme Court's admonition that it is "the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence,

---

176 F.3d at 730. The Jury Instruction given by the Trial Court at Petitioner's trial embodies the above approved instruction despite the fact the wording used was slightly different.

and to draw reasonable inferences from basic facts to ultimate facts." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Furthermore, the jury was instructed that a reasonable doubt must arise out of the evidence presented, and not mere speculation or conjecture. (Pet. Ex. 25 at 210.) Nowhere in the instructions did the trial court instruct the jury to decide the case solely on whom the jury believed between S.K. and Khan.

In sum, I conclude that the jury instructions correctly and appropriately defined the law regarding "proof beyond a reasonable doubt" and the instructions, taken as a whole, adequately explained the concept of reasonable doubt. The reasonable doubt and credibility charges did not shift the burden of proof to Khan, and did not result in a conviction in violation of his right to due process. Accordingly, I conclude that trial counsel cannot be ineffective for having failed to raise this baseless objection, and respectfully recommend that habeas relief be denied on this basis. *Werts,* 228 F.3d at 203.

### C.    Petitioner's Motion to Amend

#### 1.    Statute of Limitations

As noted above, Khan filed a "Motion for Leave to Amend" on August 26, 2012, seeking to add fourteen additional grounds which he contends fall within the narrow exception created by *Martinez v. Ryan*, 132 S. Ct. 1309 (2002). Khan acknowledges that he did not present these claims to the state courts. However, he urges this Court to review the merits of these claims because of the "change in the law" that resulted from the decision in *Martinez*.

I conclude that: (1) the amendment is untimely, (2) there is no statutory or equitable ground for tolling the statute, (3) with one exception the amendments do not relate back to the original petition, (4) *Martinez* does not create a new time-bar excuse upon which Khan may recalculate the AEDPA deadline, and (5) applying the United States Supreme Court's recent

decision in *McQuiggin v. Perkins*, No. 12-126, 2013 WL 2300806 (U.S. S. Ct. May 28, 2013), Khan's assertion of actual innocence cannot overcome the statute of limitations bar.

AEDPA sets out a strict one-year time limitation for filing habeas petitions. Under § 2244(d)(1), the AEDPA provides that a one-year statute of limitations applies to all petitions pursuant to § 2254, which begins to run the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The statute creates a tolling exception, which states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

In this case, the applicable starting point for the statute of limitations is the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The trial court denied Khan's post-sentence motion on June 9, 2009. Petitioner then had thirty days which to file an appeal; no appeal was taken in this time. Therefore, Khan's judgment of sentence became final on July 9, 2009, when the thirty-day period expired.

23

Consequently, he had one year from that date, or until July 9, 2010, to file his habeas petition. *See* 28 U.S.C. § 2244(d)(1).

On January 21, 2010 – after 196 days of the one-year federal statute of limitations had passed – Khan filed his counseled PCRA petition. (*See* Resp. Ex. A.) Because this petition was filed in accordance with Pennsylvania's procedural requirements, it is considered a properly filed application for state post-conviction relief, which tolled the one-year limitation period. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction [review] . . . is pending shall not be counted toward any period of limitation under this subsection."); *see also Artuz v. Bennett*, 531 U.S. 4, 8 (2000) ("an application is '*properly filed*' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings"). Such a petition is considered "pending" within the meaning of § 2244(d)(2) during the entire time a state prisoner is pursuing his state post-conviction remedies, including the time for seeking discretionary review of any court decisions regardless of whether such review was actually sought. *See Swartz v. Meyers*, 204 F.3d 417, 424 (3d Cir. 2000). However, the time during which a state prisoner may petition for a writ of certiorari from the denial of a state collateral petition in the Supreme Court of the United States does not toll the AEDPA's statutory period. *Stokes v. Dist. Attorney of Phila.*, 247 F.3d 539, 542 (3d Cir. 2001).

In this case, the Supreme Court of Pennsylvania denied allocator on August 8, 2011. *See Commonwealth v. Khan*, No. 874 MAL 2010 (Pa. Aug. 8, 2011). Applying *Stokes*, the AEDPA statute of limitations began to run again on that date, meaning Khan had 169 days remaining, or until January 24, 2012, to file a timely § 2254 petition.

On December 2, 2011, Khan filed a timely, counseled habeas petition.[12]  Unlike the statutory tolling period that applies while a state petition remains pending, the filing of a habeas petition does not toll the AEDPA statute of limitations.  *See Rhines*, 544 U.S. at 274-75 ("Although the limitations period is tolled during the pendency of a 'properly filed application for State post-conviction or other collateral review,' § 2244(d)(2), the filing of a petition for habeas corpus in federal court does not toll the statute of limitations") (*citing Duncan v. Walker*, 533 U.S. 167, 181-82 (2001)).  Thus, the AEDPA statute of limitations continued to run, leaving Khan with fifty-three (53) days remaining to file any amendments.  Khan did not assert his new habeas claims until August 26, 2012 – over seven months (215 days) after the statutory period had expired.  Therefore, the amendments are time-barred, unless the claims are subject to equitable tolling or the relation back doctrine.  I address each in turn, below.

### a.    Equitable Tolling

The Supreme Court of the United States has decided that "the timeliness provision in the federal habeas corpus statute is subject to equitable tolling."  *Holland v. Florida*, 560 U.S. __, 130 S. Ct. 2549, 2554 (2010).  However, equitable tolling should be used sparingly, "'only when the principle of equity would make the rigid application of a limitation period unfair.'"  *Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003) (*quoting Fahy*, 240 F.3d at 244); *see also Pabon v. Mahonoy*, 654 F.3d 385, 399 (3d Cir. 2011) (*quoting Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999)).  Accordingly, the Supreme Court has stated that a litigant invoking the doctrine of equitable tolling bears the burden of establishing two elements: "'(1) that he has been pursuing

---

[12]  The habeas petition was signed on November 30, 2011, but was not filed and docketed until December 2, 2011.  The prisoner mailbox rule does not apply to counseled habeas petitions, so the filing date is deemed December 2, 2011.  *See Kapral v. United States*, 166 F.3d 565, 567-568 (3d Cir. 1999) (mailbox rule does not apply when prisoner's attorney files a habeas motion).

his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Williams v. Beard*, 300 Fed. App'x 125, 129 n.6 (3d Cir. 2008). Courts are instructed to take each petitioner's particular circumstances into account and to avoid the rigid application of precedent. *Pabon*, 654 F.3d at 399 (*citing Holland*, 130 S. Ct. at 2563).

      The Third Circuit has offered further guidance on the doctrine of equitable tolling, recognizing several narrow instances in which equitable tolling may be applied. *See Jones*, 195 F.3d at 159. These instance include: (1) if the defendant has actively misled the plaintiff; (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights; or (3) if the plaintiff has timely asserted his rights mistakenly in another forum. *See id.* (internal quotation marks omitted) (*citing United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). The Third Circuit has also described other narrow instances, such as where the plaintiff "received inadequate notice of her right to file suit, where a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that she has done everything required of her." *See id.* (*quoting Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)). Such narrow instances, however, do not include a "[l]ack of understanding or knowledge of the law." *See Bowan v. Palakovich*, No. 06-3378, 2012 WL 383663, at *5 (E.D. Pa. Jan. 26, 2012) (*citing Jones*, 195 F.3d at 160). Thus, "[t]he law is clear that courts must be sparing in their use of equitable tolling." *Jones*, 195 F.3d at 160 (*quoting Seitzinger*, 165 F.3d at 239). Ultimately, "'a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interest of justice.'" *Id.* (*quoting Midgley*, 142 F.3d at 179).

      Khan argues he is entitled to equitable tolling because of the "extraordinary

circumstances." Khan contends that both his PCRA and trial counsel "abandoned" him during state proceedings, thus "complicating his federal *habeas* petition." (Doc. No. 27 at 18.) Specifically, he argues his trial counsel abandoned him because trial counsel "permitted him to be convicted despite knowing there was insufficient evidence on the record," did not seek an acquittal, and abandoned Claim 4 in the PCRA appeal. (*Id.* at 19-20.) He also asserts that counsel refused to file a habeas petition on his behalf unless he paid him an "exorbitant amount of initial payment." (Doc. No. 28 at 20.) I conclude that these arguments do not merit equitable tolling of the statute of limitations.

Khan fails to show how his prior counsel's alleged "abandonment" interfered with his filing of a timely amendment to his habeas petition. His original habeas petition was timely filed by new counsel. There is no allegation that his current habeas counsel "abandoned" him, causing an extraordinary circumstance that prevented the timely filing of the proposed amended petition. As noted, Khan's claim is that he was "abandoned" during trial, as evidenced by his conviction and counsel's failure to seek an acquittal. This can have no equitable tolling effect on the habeas statute of limitation, because the right to habeas relief was not yet ripe. Indeed, the limitations period had not yet even begun to run. Likewise, the time period that his PCRA petition was pending, during which Claim 4 was allegedly abandoned, does not justify an equitable tolling the running of the federal limitations period because the period was *statutorily* tolled during that period. Finally, the allegation that counsel demanded a substantial fee before agreeing to undertake the habeas representation is also unavailing: it does not address how Khan was extraordinarily prevented from timely filing his amendment after he had retained other counsel, who succeeded in filing the original petition in a timely manner (indeed, the habeas petition was filed with nearly two months remaining on the AEDPA statute of limitations).

In sum, I conclude that the record does not support the conclusion that the strict application of the limitation period is unfair in the present case. I therefore conclude that this matter is not one of the rare situations that warrants equitable tolling.

### b. Relation Back Doctrine

Having concluded that Khan's proposed claims are barred by the AEDPA's one-year statute of limitations, the only way in which these claims may be reviewed is if they are deemed to "relate back" to his timely-filed petition.[13]

Under Federal Rule of Civil Procedure 15(c)(1)(B), a party may raise a new claim that would have been barred by the statute of limitations if the claim "arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(B). In discussing what constitutes "conduct, transaction, or occurrence" in the context of a habeas petition, the Supreme Court has stated that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle*, 545 U.S. at 664; *Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009). However, an amended petition "does not relate back (and therefore meet AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle* 545 U.S. at 650 (parenthetical in original); *see also Hodge*, 554 F.3d at 378. Stated another way, an amendment to a habeas petition will relate back if it seeks to clarify a claim already made. *See United States v. Duffus*, 174 F.3d 333, 337 (3d Cir. 1999). However, where a petitioner attempts to raise "an entirely new claim or theory of relief" after the statute of limitations has expired, even if it relates to the

---

[13] The Federal Rules of Civil Procedure apply to amendments to petitions for writ of habeas corpus. *See Mayle v. Felix*, 545 U.S. 644, 654-55 (2005).

same conviction, the court should deny such amendments. *See United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000). This is because, as the Supreme Court explained: "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Mayle*, 545 U.S. at 662 (citation omitted).

Khan argues that his untimely proposed claims relate back because: (1) they are all tied to a common core of operative facts that govern his initial timely claims; and (2) "the relation back doctrine, post-*Martinez*, must only broaden [sic] to embrace claims that resonate of ineffective assistance at the initial review." *See* (Doc. No. 27 at 17). I conclude that these arguments are meritless.

As an initial matter, *Martinez* does not provide a basis for Khan to relate back his claims. As noted above, *Martinez* only provides cause to excuse a procedural default; it did not address issues of timeliness and relation back. *See e.g., Stromberg v. Varano*, No. 09-401, 2012 WL 2849266, *5 (E.D. Pa. July 11, 2012) (holding that *Martinez* was not controlling where the petitioner's habeas petition was time-barred).

Second, Khan's new claims differ in both "time and type" from his original timely claims. The timely claims alleged ineffective assistance of counsel for failing to object or request certain jury instructions on demeanor evidence (Claim 1), prior statements (Claim 2), the elements of unlawful contact with a minor (Claim 3), and the reasonable doubt standard (Claim 4). The "facts" that supported those claims are the instructions themselves, counsel's basis for not objecting to, or requesting, certain instructions, and any prejudice that might have come from those allegedly erroneous jury instructions. In contrast, the new claims attack the jury selection process (Claim 5); the failure of counsel to challenge the conviction (Claims 6, 8, 13, 14);

counsel's failure to call certain witnesses to testify (Claims 7, 10, 16); counsel's failure to object to the use of "November 2006" (Claims 9, 11); counsel's failure to obtain certain discovery (Claim 15); and counsel's ineffectiveness in the "cumulative and totality." (Claim 18). None of these claims support the original claims, which related to counsel's failure to object to, or request, certain jury instructions.[14] Because all of these claims are entirely new ineffectiveness claims that require the application of different underlying legal standards and look to facts that are different in both time and type, I conclude that they do not relate back to the original petition, and thus are time-barred.[15]

### c.      *McQuiggin v. Perkins*

On May 28, 2013, the United States Supreme Court held in *McQuiggin v. Perkins* that a colorable claim of actual innocence constitutes an equitable exception that can overcome the bar of the AEDPA one-year statute of limitations. *Id.*, 2013 WL 2300806 at *7. The Court added, however, that frivolous claims of actual innocence "should occasion instant dismissal." *Id.* at

---

[14] I note that Khan's original habeas memorandum mentioned a number of his amended claims, while not formally presenting them as such. That memorandum was filed on March 29, 2012, which was also after the AEDPA statute of limitations expired on January 24, 2012. Thus, the mention of these new claims in the March 29, 2012 memorandum does nothing to make them timely. More importantly for relation back purposes, it must be noted that the Supreme Court in *Mayle* made clear that permitting relation back under Fed. R. Civ. P. 15(c)(1)(B) of new habeas claims that arose out of different conduct, transactions or occurrences would, the Court held, apply the rule too generally. *Mayle*, 545 U.S. at 657 (holding that, under such a standard, "[a] miscellany of [habeas] claims for relief could be raised later rather than sooner and relate back, for 'conduct, transaction, or occurrence' would be defined to encompass any pretrial, trial, or post-trial error that could provide a basis for challenging the conviction. An approach of that breadth, as the Fourth Circuit observed, 'views "occurrence" at too high a level of generality.'" (internal citations omitted)).

[15] Additionally, because these claims were never presented for exhaustion in the state courts, they are unexhausted and procedurally defaulted with no showing of cause and prejudice or miscarriage of justice.

*11.  "Colorable," as that term has been used heretofore in the context of the miscarriage of justice method of excusing procedural defaults, means "reliable evidence of factual innocence." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Courts have stated that to establish a colorable claim of actual innocence, "it is not enough to show that a reasonable doubt is conceivable." *Bastien v. Dragovich*, 128 F. Supp. 2d 204, 211 (M.D. Pa. 2000) (citing *Werts*, 228 F.3d at 193).  Rather, a petitioner must show, usually by way of new evidence, that it is more likely than not that no reasonable jury would have convicted him.  *Schlup*, 513 U.S. at 327; *Glass v. Vaughn*, 65 F.3d 13, 16-17 (3d Cir. 1995).  This showing requires "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324; *see also Cristin v. Brennan*, 281 F.3d 404, 420-421 (3d Cir. 2002).

Having carefully reviewed the evidence Khan presented in support of his Motion to File an Amended Petition, I conclude that he has failed to meet his burden of demonstrating actual innocence in order to qualify for the new equitable exception to make his claims timely.  In short, he has not offered evidence such as a recantation of inculpatory trial testimony or scientific evidence that no crime occurred, so that one could conclude that no reasonable jury would have convicted him.

Khan presents the expert report of Gerald Cooke, Ph.D., a clinical and forensic psychologist.  (Pet. Ex. H.)  In the report, Cooke opines that "the scenario in which alleged abuse occurs is often key to understanding whether one is dealing with a true or false allegation."  (*Id.* at 3-4.)  From his review of the trial evidence, Cooke asserts that "the setup of [Khan's] home, and the coming and going of parents and students, would be a scenario that is not consistent with the kind of precautions against discovery that someone being sexually involved with a child

would construct." (*Id.* at 5.) He also opines that the trial evidence that S.K. was punished by her parents for not doing well academically in a college-level course could indicate that her allegations of sexual abuse against Khan were her attempt to strike back at her parents in a deliberate or manipulative way as revenge for some kind of punishment or restriction. (*Id.* at 6.) He opines that this evidence "raises a possible motivation for making a false allegation." (*Id.*) His report concludes with the caveat that, since he has never evaluated S.K., both ethical constraints and practice parameters prevent him from offering any direct opinion about her. Nothing in Cook's report constitutes scientific evidence that no crime occurred or that Khan could not have been the perpetrator. Accordingly, I recommend it does not qualify as new reliable evidence of actual innocence.

Khan next offers the sworn declaration of Kate Siddiqi, a hospital-based social worker. She asserts that she was prepared to testify as a character witness at Khan's trial, but was not actually called as a witness. She did offer testimony at Khan's sentencing hearing about his character. She asserts that, during the time she was present at the trial, members of the jury appeared disengaged. (Pet. Ex. I.) I conclude that nothing in Siddiqi's declaration constitutes reliable new evidence of actual innocence.

In a sworn declaration, Jai Bhagat asserts that he took music lessons from Khan at the same period as S.K., and testified at trial about his knowledge of the events. (Pet. Ex. J.) At trial, he told the jury that he and S.K. went to an event together, where he was to practice with the Mansfield Orchestra and S.K. was to perform at a concert in the area. (Pet. Ex. 24 at 93.) Bhagat testified at trial that, during the trip, S.K. told him Khan had "massaged her breasts." (*Id.*) When asked during cross-examination whether he thought S.K. had a crush on Bhagat, he was directed not to answer because the Court sustained an objection that the question called for

speculation as to what S.K.'s feelings were.  (*Id.* at 110.)

In his sworn declaration, Bhagat states that he believed S.K. had a crush on him and elaborated that, during the trip, S.K. constantly sat beside him at meals, and engaged in uninvited conversations with him.  (Pet. Ex. J at ¶¶ 29-33.)  He asserts that he learned later that S.K. bragged to Khan that she had "fooled around" with him, and states that he generally felt uncomfortable in her presence because of her advances.  (*Id.* ¶¶ 27, 35.)  I conclude that the Bhagat declaration does not present any new reliable evidence of actual innocence.  Bhagat's speculation regarding S.K.'s feeling remain entirely speculative.  His additional assertion that S.K. claimed to have fooled around with him is not exculpatory evidence.

Khan has also submitted his own sworn declaration concerning the conflicts he had with his trial counsel and PCRA counsel about counsels' representations, which form the basis of his ineffective assistance claims.  (Pet. Ex. K.)  Nothing in the declaration, however, presents new reliable evidence of Khan's actual innocence.

In a sworn declaration, Zaineb Ainuddin asserts that he assisted Khan in his dealings with his trial and PCRA counsel, expressed concern that the racial and gender makeup of Khan's jury would be disadvantageous to his defense, and helped Khan communicate his dissatisfaction with counsels' performances.  (Pet. Ex. L.)  Nothing in the declaration, however, presents new reliable evidence of Khan's actual innocence.

Finally, Khan presents the expert report of Brian Q. Silver, Ph.D.  (Pet. Ex. M.)  Silver offers opinions on the differences between North Indian classical music and western classical music.  Nothing in Silver's report presents new reliable evidence of Khan's actual innocence.

Based on this review of Khan's submissions, I recommend that he can find no relief from the bar of the AEDPA statute of limitations under the holding in *McQuiggin* because he makes

33

no colorable claim of actual innocence.

        **2.**      **Claim 17 – "Failure to require jury to consider all evidence, not just** *he v. she* **evidence"**

Claim 17 arguably relates to the original habeas claims, which challenged counsel's effectiveness, given perceived errors in the jury instruction. Claim 17 also relates to counsel's effectiveness, based upon counsel's failure to object to jury instructions, to the extent the instructions allowed the jury to decide the case without considering "all" of the evidence.

In Claim 17, Khan asserts that trial counsel was ineffective because he "made no effort to object to the jury instructions that squarely laid an emphasis for the jury to decide on her v. his testimony, disregarding all the other mitigating evidence to the contrary." (Doc. No. 20-4 at 8.) In other words, he appears to contend that the jury instructions misled the jury into thinking they should decide the case based solely on whether it believed the testimony of S.K. or Khan. This claim arguably does relate back to the original petition because it is of both the same "time and type" as Khan's claim regarding arising out of the "reasonable doubt" instruction (Claim 4).

As detailed above, this argument finds no support in the record, and fails as a matter of law. In addressing the reasonable doubt claim on the merits, including the instructions that the judge used regarding their consideration of witness testimony, I recommended that the trial judge's instruction on reasonable doubt and his credibility instruction – which were almost identical to the Pennsylvania Suggested Standard Instructions – did not entitle Khan to habeas relief. Claim 17, I conclude, fails for the same reasons.

## IV.    CONCLUSION

For all the foregoing reasons, I respectfully recommend that the petition for writ of

habeas corpus be **DENIED** without an evidentiary hearing and with no certificate of appealabilty granted.[16]

Therefore, I respectfully make the following:

---

[16] Also before the Court are numerous motions in which Khan seeks various forms of relief. In an Order that will accompany this Report and Recommendation, the following Motions will be denied: 1. "Motion for Judgment, Motion for Hearing" (Doc. No. 14); 2. Motion for Leave to Amend Petition (Doc. No. 20); 3. First Motion for Leave to Supplemental Brief (Doc. No. 22); 4. First Motion for Leave to File Rule 7 Motion (Doc. No. 33); 5. "First Motion for Hearing Rule 8 Motion for Evidentiary Hearing" (Doc. No. 34); 6. Second Motion for Leave to File Sworn Affidavit (Doc. No. 40); 7. Emergency and Renewed Motion for Leave to take Deposition (Doc. No. 43); 8. Motion for Discovery (Doc. No. 44); and 9. "Motion for Leave to File Under Rule 7 to Expand Record" (Doc. No. 45).

# R E C O M M E N D A T I O N

AND NOW, this __31ST__ day of May, 2013, IT IS RESPECTFULLY

RECOMMENDED that the petition for writ of habeas corpus be DISMISSED without an

evidentiary hearing and with no certificate of appealability issued.

Petitioner may file objections to this Report and Recommendation.  *See* Local Civ. Rule

72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.


BY THE COURT:


 /s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE